# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-mj-30091** |
| | : | |
| **MATTHEW THOMAS KROL,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## UNITED STATES' MOTION IN SUPPORT OF PRETRIAL DETENTION

Defendant Matthew Thomas Krol assaulted at least three law enforcement officers on January 6, 2021.  In the past few years he has shown escalating behavior and signs of extreme radicalization to the point that he has engaged in a violent attack against law enforcement.  He is a danger to the community such that the government cannot agree to any conditions of release. For these reasons, the government respectfully moves this Court detain the defendant pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(a) (felony involving a dangerous weapon). As explained below, no conditions or combination of conditions can ensure the community's safety.  As such, he should be detained pending trial.

The United States District Court for the District of Columbia issued the instant Complaint against Defendant Krol, charging him with Assaulting, Resisting, or Impeding Certain Officers Using a  Dangerous Weapon in violation of 18 U.S.C. §§ 111(a) and (b); Civil Disorder, in violation of 18 U.S.C. §

231(a)(3); Entering and Remaining in a Restricted Building or Grounds,

Disorderly and Disruptive Conduct in a Restricted Building or Grounds, and

Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. §§

1752(a)(1), (2), and (4)); and Act of Physical Violence in the Capitol Grounds or

Buildings (40 U.S.C. § 5104(e)(2) (F)) stemming from Defendant's involvement in

the insurrection at the United States Capitol on January 6, 2021.

On February 22, 2022, FBI agents arrested Defendant in Linden, Michigan.

Defendant made his initial appearance in the United States District Court for the

Eastern District of Michigan on February 24, 2022. His detention hearing is

scheduled for February 28, 2022.

## I. FACTUAL BACKGROUND

### A. The Attack on the United States Capitol on January 6, 2021

The United States Capitol is secured 24 hours a day by U.S. Capitol Police.

Restrictions around the U.S. Capitol include permanent and temporary security

barriers and posts manned by U.S. Capitol Police. Only authorized individuals

with appropriate identification are allowed access inside the U.S. Capitol. On

January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members

of the public.

On January 6, 2021, a joint session of the United States Congress convened

at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C.

2

During the joint session, elected members of the United States House of

Representatives and the United States Senate were meeting in separate chambers of

the U.S. Capitol to certify the vote count of the Electoral College for the 2020

Presidential Election, which had taken place on November 3, 2020. The joint

session began at approximately 1:00 p.m. Shortly thereafter, by approximately

1:30 p.m., the House and Senate adjourned to separate chambers to resolve a

particular objection. Vice President Michael Pence, who was also the President of

the Senate, was present and presiding, first in the joint session and then in the

Senate chamber.

As the proceedings continued in both the House and the Senate, and with

Vice President Michael Pence present and presiding over the Senate, a large crowd

gathered outside the U.S. Capitol. As noted above, temporary and permanent

barricades were in place around the exterior of the U.S. Capitol building, and the

U.S. Capitol Police were present and attempting to keep the crowd away from the

U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway, and the

exterior doors and windows of the U.S. Capitol were locked or otherwise secured.

Members of the U.S. Capitol Police attempted to maintain order and keep the

crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals

in the crowd forced entry into the U.S. Capitol, including by breaking windows

and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

During the violent protest, several individuals were wearing bulletproof vests and anti-tear gas masks, and some were armed with weapons including bats, pepper spray, sticks, and zip ties. Also, during the protest, several law enforcement officers were assaulted and injured by these violent protestors while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol. The Defendant, as detailed below, is currently charged with multiple instances of assault, as well as other criminal violations.

### B. Identification of Matthew Thomas Krol, AFO #291

According to open-source law enforcement databases, Matthew T. Krol III is a 63-year-old male from Linden, Michigan and the user of a Sprint Account with a

phone number ending in -7442.[1]  Open-source law enforcement databases show that the number ending in -7442 is in the name of Matt Krol.

Based on FBI investigation, Krol has been identified as FBI Most Wanted Capitol Violence Subject #291, wanted for assaulting a Capitol Police Officer, stealing a police baton from said Officer, and using the stolen baton to assault other Capitol Police Officers. Video of the incident is available from multiple viewpoints, including officer body worn camera footage. Video Exhibits 1-5 (submitted to the Court and Defendant via USAfx on February 25, 2022).

On April 30, 2021 an initially-anonymous tipster contacted FBI, identifying FBI Most Wanted Capitol Violence Subject #291 as seen in Image 1 below.



*Image 1*

---

[1] The government knows the entire phone number but has only used the last four digits here due to the public nature of the filing.

In a follow-up interview on May 19, 2021 the same initially-anonymous tipster explained to a fellow FBI Special Agent that he/she knew Krol personally. The tipster explained that they had identified Krol from FBI Most Wanted images on Twitter. The tipster also explained that they had also seen images of Krol attending protests at the Michigan Capitol and provided a photograph of a person at those protests they identified as Krol.  That photograph is Image 2 below.



*Image 2*

Based on a review of the photo provided by the tipster and the footage from January 6, 2021, it was noticed that in both instances, Krol appears to be wearing an American flag tucked in the shoulder of his backpack.

On January 6, 2021 the person depicted in FBI Most Wanted Capitol Violence Photograph Series #291, who has been identified as Matt Krol, was captured in camera footage participating in violence against law enforcement officers at the Capitol in Washington D.C. Images 3-6, from the FBI Notice, appear below



*Image 3*



*Image 4*          *Image 5*



*Image 6*

Video footage of the events at the Capitol Building in Washington D.C. on January 6, 2021 shows that at approximately 2:28 p.m. near the Capitol Steps on east side of the building, Matt Krol pushed forward through the crowd, threw a water bottle at police officers, pulled other civilians out of his way, and attacked Metro Police Department Officer D.P., grabbing him and his police baton.

In the video footage from January 6, 2021, Krol is shown wearing blue pants, a dark hooded jacket, a red hood, a green backpack with a blue flag draped across the back and an American flag extended over his right shoulder, as depicted in Images 7-9 below



Image 7



Image 8



*Image 9*

The video footage shows that Krol spun Officer D.P. around multiple times, pulling them into the crowd and eventually wresting the baton from Officer D.P.'s hand. Krol then turns to the crowd, holding up the baton as if in celebration. Screenshots from the video footage are below in Images 10-12.



Image 10



Image 11                     Image 12

Krol then used Officer D.P.'s baton to strike other Metro Police Department

Officers, including Officer J.M. as depicted in Image 13 below.



Image 13

Officer D.P.'s body camera footage shows Krol's initial assault in Images 14-20 below.



Image 14



Image 15



*Image 16*



*Image 17*



*Image 18*



*Image 19*



Image 20

Officer J.M.'s body camera footage shows Krol's assault on Officer J.M. and another officer who is holding a shield with the baton that Krol stole from Officer D.P. as shown in Images 21-27 below.



Image 21



*Image 22*



*Image 23*



*Image 24*



*Image 25*



*Image 26*



*Image 27*

Additional review of open-source videos also show Krol's attacks.

Specifically, a YouTube video found at

https://www.youtube.com/watch?v=yFMZwA7fPoQ titled "Protesters Break

Police Line In Front of US Capitol" shows Krol force his way through the police

line, grab Officer D.P., and spin him around while stealing Officer D.P.'s baton.

Another video clip found at https://jan6attack.com/videos/b/bLzjJt5EsDB8/ shows

Krol forcing his way through the crowd. A similar video clip was received by the FBI from sedititonhunters.org titled "Washington DC Capitol breach" and shows Krol grabbing Officer D.P, spinning him around, stealing his baton, holding it up to the crowd, and using the baton to strike at other officers.

On March 11 and 16, 2021, U.S. Capitol Police Sergeant A.G. was interviewed by the FBI. A.G. was a U.S. Capitol Police (USCP) Sergeant that was working on January 6, 2021 during the Capitol Riot. A.G. reviewed a number of videos available on the Internet with the FBI and identified individuals who assaulted him on January 6, 2021. A.G. provided a screenshot of a white male with a white goatee wearing a red hoodie pulled up over a hat (Image 28). The male is carrying a short pole or baton. This individual struck A.G. with the baton. The screenshot came from a video posted at

https://www.projects.propublica.org/parler-capitol-videos. The screenshot was from the video titled "2:29 p.m. Near Capitol." A.G. found a second video from the same website titled "2:28 p.m. Near Capitol" in which the male with the red hoodie can be observed striking an officer at approximately the 10 second mark and again at the 20 second mark. At approximately the 30 second mark, he can be observed striking A.G. (Image 29). A.G. believes that this strike injured his hand.



*Image 28*



*Image 29*

Publicly available sources confirm the identity of Krol. Krol is the self-professed executive officer of the Genesee County Volunteer Militia and was frequently seen in local news and media reports during the Flint Water Crisis in early 2016. These reports are currently available through various sources online including https://www.youtube.com/watch?v=xFeJ6ipTLsU, a video titled "Matt Krol III speaks about the water crisis at Flint City Hall with Genesee County

Volunteer Militia" (Image 30),

https://www.mlive.com/news/flint/2016/01/militia_members_rally_outside.html, a

news article describing Krol as the "Second Commander" for the Genesee County

Volunteer militia (Image 31), and

https://www.dailykos.com/stories/2016/2/4/1479931/-Senate-Democrats-block-

energy-bill-over-Republican-refusal-to-add-Flint-aid-package, a news article about

the Flint water crisis (Image 32).



*Image 30*



#flintwatercrisis
Matt Krol III speaks about the water crisis at Flint City Hall with Genesee County Volunteer Militia

*Image 31*



*Image 32*

Pursuant to legal process, the phone records for Krol's phone number ending in -7442 show that the user of the phone traveled to the Washington D.C. area from the Michigan on January 5, 2021 and returned to Michigan on January 7, 2021. The results also show that the user of the phone was in the downtown Washington D.C. area during the day of January 6, 2021, and was specifically in or immediately around the U.S. Capitol Building from 1:42 p.m. through 3:01 p.m. According to the body camera footage of Capitol Police Officers D.P. and J.M., Krol began assaulting them at approximately 2:28 p.m. or 2:29 p.m.

### C. Defendant Krol's Post January 6 Statements

On October 27, 2021, Krol was interviewed by Customs and Border Protection (CBP) as he was returning to the United States. Krol identified the same phone number ending in -7442 as his own number to law enforcement. When stopped, Krol was "pretty pissed" and claimed he was more patriotic than any of the officers in the surrounding area.

While at the border, when Krol was asked if he is an activist in Michigan, he admitted to attending rallies while having an AR strapped on his shoulder. When asked if he was involved with riots or rallies, Krol stated that he had not attended any riots and what happened in Washington D.C. was not a riot. Instead, he characterized it as a peaceful protest. He said it was "bullshit" how there are guys locked up.

23

On February 22, 2022, Krol was finally arrested. Following his arrest, he made a number of post-*Miranda* statements to FBI. Krol admitted he associates with a number of people who have been charged with the plot to kidnap Governor Whitmer and that he is a militia enthusiast. In particular, FBI asked him about Facebook messages[2] he exchanged with people before January 6. On June 16, 2020, one of them now charged in connection with the plot to kidnap Governor Whitmer posted on Facebook "Everything said on here is hypothetical but it's time to move past the rally's [sic] and pointless bullshit that doesn't work." Krol responded "[I] spoke on the Michigan Capital [sic] steps last fall that I would rather apprehend Tyrants at the Capital [sic], hang them on those beautiful oak trees then kill citizens in a civil war…just sayin." When Krol was asked about the conversation, Krol did not change his position. He reiterated that it was an alleged hypothetical.

During the FBI interview, he admitted he was in Washington D.C. on January 6th and that he walked all the way from Trump's speech to the Capitol—walking over a wall to get to the grassy area outside of the Capitol. He admitted that the person that FBI identified as him in the photos and videos from January 6th looks exactly like him, but said it was not actually him. He even admitted the

---

[2] Krol's social media accounts were cancelled/removed prior to the Complaint in this case being issued.

person was wearing similar clothing to what he wore on January 6 in DC. At one point in the interview, he stated that the person assaulting law enforcement in the videos (that government identified as Krol) was upset because "all of the innocent people who were getting smacked down." And then he asked the agents to go back 15 minutes in the video to show what was happening.

The agents and Krol discussed trespassing on January 6. Krol stated that he was never a trespasser because "it's the people's house, and [he] was there, as a people." He said "there was no trespassing." While Krol denied assaulting law enforcement, FBI asked him questions about the assault captured on video. Krol stated that he did not know if the assault of law enforcement was a criminal act because he did not know the reason behind the assault. He went on to say that his belief is that if a police officer is assaulting something, that person has a right to defend themselves and he even thinks the person's neighbor has a right to defend them.

According to the PSR, which are consistent with statements he made to FBI, he was previously discharged from the U.S. Marine Corps for disobeying an order. He has had contact with law enforcement, but has no criminal history. He claims that he is disabled and unemployed.

## II. ARGUMENT

### A. Applicable Statutory Authority

18 U.S.C. § 3142(f)(1) advises that the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community … in a case that involves … (A) a crime of violence…for which a maximum term of imprisonment of 10 years or more is prescribed."

"Crime of violence" is defined in 18 U.S.C. § 3156(a)(4) in part as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another or (B) any other offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  Defendant's assault with a dangerous weapon on law enforcement is a crime of violence pursuant to 18 U.S.C. § 3142(f)(1)(E). Defendant has been charged with multiple violence offenses under 18 U.S.C. § 111 and 18 U.S.C. § 1752, to include §111(b).

Under 18 U.S.C. § 3142(g), the judicial officer shall similarly consider whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community –

an inquiry that considers (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) his history and characteristics, and (4) the nature and seriousness of the danger posed by his release.

The United States seeks detention because no combination of conditions will assure that the defendant will not pose a danger to the safety of the community.

## B. The 18 U.S.C. § 3142(g) Factors Weigh in Favor of Detention.

The government proffers the information contained below in support of establishing the requisite clear and convincing evidence requiring the defendant's detention.

### i. The Nature and Circumstances of the Offense

During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol. The defendant was involved in the violent assault of at least of the officers who were protecting the Capitol that day. For his crimes, he is charged with multiples felonies and misdemeanors—reflecting the seriousness of the nature and circumstances of the offense.

The defendant was not just a part of the crowd or someone who got "caught up in the moment." He was at the front of the crowd that assaulted police lines on the West Terrace and was one of the first people to break that line that protected

the Capitol by violently assaulting officers.  Krol's assault of law enforcement was extreme, as shown in the video footage that the government has submitted to the Court (Video Exhibits 1-5).  Krol broke his way through the crowd, spun a law enforcement officer around multiple times, wrestling the officer's baton away from him and then used the baton to violently strike the officers multiple times.  In the moment that he stole the baton, he held it up as if celebrating before he beat the officers.

The nature and circumstances of this offense weigh heavily in favor of detention. In *United States v. Chrestman*, the D.C. District Court articulated a set of factors for evaluating the nature and circumstances of offenses committed at the Capitol, and how those factors bear on detention. 525 F. Supp. 3d 14, 26-27 (D.D.C. 2021). Those factors include whether the defendant: (1) is charged with felony offenses, or solely with misdemeanors; (2) engaged in prior planning for his criminal conduct before arriving at the Capitol; (3) carried or used a dangerous weapon at the Capitol; (4) coordinated with other participants before, during, or after the riot; (5) assumed a formal or de facto leadership role with respect to the riot; and (6) injured, attempted to injure, or threatened injury to others; damaged or attempted to damage property; actively threatened or confronted law enforcement officers; or promoted or celebrated efforts to engage in such conduct. *Id.*

Almost all of the *Chrestman* factors put the defendant in a more serious category and demonstrate his dangerousness. First, he has been charged with a felony and crime of violence. Second, Defendant engaged in planning prior to arriving at the Capitol, namely arranging travel from Michigan to D.C. In June 2020, he engaged in social media conversations about doing something beyond simply rallying. He said he "would rather apprehend Tyrants at the Capital [sic], hang them on those beautiful oak trees." This prior mindset and travel to DC show the escalation that led to his violent actions on January 6. When given the opportunity, he attacked officers with the mob of rioters around him. As the Court said in *Chrestman,* "[t]hese motives and steps taken in anticipation of an attack on Congress speak volumes to both the gravity of the charged offense, as a premeditated component of an attempt to halt the operation of our democratic process, and the danger a defendant poses not just to the community in which he resides, but to the American public as a whole." *Id.* at 26.

Third, his actions demonstrated a dangerous hostility to law enforcement. The Court noted in *Chrestman*, "[g]rave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement…". *Id.* The defendant repeatedly confronted police with, menacing behavior and the violent assault of at least three officers. In particular, using a dangerous weapon against

29

law enforcement is an extremely serious offense.  The nature and circumstances of the offense weigh in favor of detention.

ii. <u>The Weight of the Evidence Against the Defendant</u>[3]

The weight of the evidence weighs in favor of detention. He is seen on camera and video attacking police officers. He was photographed/video recorded from multiple camera angles.  The clothes he is wearing while he assaults officers matches the clothing he said he was wearing.  In the videos from January 6, he has a flag pinned to his shoulder, the same way he does in pictures from his protests in Michigan—almost as if it is his signature.  A witness who knows him personally recognized the defendant in the videos and/or photos. Collectively, there is strong evidence of guilt and a conviction is likely. Furthermore, his statements to law enforcement corroborate his involvement in the assaults.  This factor also supports detention.

iii. <u>The History and Characteristics of the Defendant</u>

The government recognizes Defendant's lack of criminal history.[4]

However, his actions weigh against his release.  Defendant is quite proud of his

---

[3] The government is aware that in the Eastern District of Michigan, this factor is analyzed differently than in D.C.  While in EDMI, the Court considers the weight of the evidence of Defendant's dangerousness, in DC the courts consider the weight of the evidence against the defendant.  The government has applied the DC analysis above.  The government respectfully submits that under either analysis, this factor weighs in favor of detention.

[4] Defendant's lack of criminal history does not prevent him from being detained.  In fact, other defendants who engaged in assault of law enforcement on January 6, 2021 have been detained despite their lack of criminal history.  *See United States v. Brown*, 21-3063 (D.C. Cir. 2021)

militant background. While he has no criminal history, what he has shown in his actions over the years is an escalating radicalization that has now become violent—specifically against law enforcement. Defendant has an affinity for firearms and has held leadership positions in the Michigan militia and even ran an unsuccessful campaign to be the Genesee County Sheriff. What he has shown is that while he claims to believe in law and order and sought to be the County's top law enforcement official, he only believes in law and order when it suits his political ends.

Krol associates with a number of people who have been charged in connection with the plot to kidnap Governor Whitmer. Recently, Krol has made the very concerning statements in his Facebook that he would "rather apprehend Tyrants at the Capital [sic], hang them on those beautiful oak trees." He then traveled from Michigan to Washington D.C. on January 6 and went beyond attending a protest/rally, and violently assaulted law enforcement multiple times. Following January 6, he has made a number of statements to law enforcement—in October and upon his arrest—that show his minimization and utter denial of what happened on January 6. These statements show that he is a continued danger. Not

---

(affirming district court's detention of defendant charged with assault with a dangerous weapon despite having no criminal history); Memorandum Opinion Detaining Defendant McAbee (Dkt. 166), *United States v. McAbee*, 21-cr-35 (D.D.C. Dec. 21, 2021) (Sullivan, J.); Order of Detention Pending Trial (Dkt. 19), *United States v. McKellop*, 21-mj-307 (D.D.C. March 30, 2021) (Faruqui, M.J.).

only has his behavior been escalating, he has zero ability to distinguish the difference between a peaceful event and a violent riot.

The removal/deletion of his social media accounts are also questionable to the government. If released, the defendant would have even more opportunities to unleash violence against those in the government (i.e. the pretrial services officer who would be tasked with supervising him) and to potentially obstruct the proceedings against him.

Defendant claims that he has been disabled for approximately 8 years, yet he has been healthy enough to travel extensively as noted in the PSR. He also told agents that he was able to walk all the way from former President Trump's speech on January 6, 2021 all the way to the Capitol. The phone records show that he was there for a significant amount of time and the video exhibits show his physical attack. While Defendant claims he has health issues, the surveillance in this case and other evidence seem to suggest his medical condition is not life-threatening. The history and characteristics of Defendant weigh in favor detention.

iv. <u>The Nature and Seriousness of the Danger Posed by Defendant's Release</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posted by a defendant's release, also weighs in favor of Defendant's detention. Krol first deprived an officer of one of his critical law enforcement tools—his baton—and physically assaulted at least three officers. He

did this at a time when the mob outside the lower west terrace was in a frenzied state.  The Facebook conversations and post-January 6 statements also demonstrate Defendant's unapologetic nature regarding his criminal activity that day.  His statements viewed in hindsight after his assaultive actions should give the Court grave concern about the defendant's continuing danger to the community.

Given the above assessment of all four relevant factors, no conditions or combination of conditions can effectively ensure the safety of any other person and the community.

## III. CONCLUSION

WHEREFORE, the United States respectfully requests that the Court GRANT the United States' Motion for Pretrial Detention.

Respectfully submitted,

DAWN N. ISON
UNITED STATES ATTORNEY

By:  /s/ *Mitra Jafary-Hariri*
MITRA JAFARY-HARIRI
Assistant United States Attorney
Capitol Siege Section (on Detail to D.C.)
211 W. Fort Street, Suite 2001
Detroit, MI 48226
mitra.jafary-hariri@usdoj.gov
(313) 226-9632