**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:22-cr-00110-RC** |
| **MATTHEW THOMAS KROL** | |
| **Defendant.** | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Matthew Thomas Krol to 78 months' incarceration, which is within the guideline range calculated by the Probation Office, three years of supervised release, $2,000 restitution, and a mandatory $100 special assessment.

## I.   INTRODUCTION

The defendant, Matthew Thomas Krol, viciously participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

On January 6, Krol—a self-professed executive officer of the Genesee County, Michigan Volunteer Militia and associate of the Wolverine Watchmen, an extremist group comprised of individuals convicted in the plot to kidnap Michigan Governor Gretchen Whitmer—joined the storming of the police line on the West Plaza, stole a police baton from an officer by pulling the officer in circles before wrestling it away, and holding it up in the air in celebration. Krol then used that same police baton to violently strike at least three police officers, badly injuring the right hand of a U.S. Capitol Police Sergeant. After January 6, Krol stated to federal border patrol agents that "what happened in Washington D.C. was not a riot" and was a "peaceful protest." Following his arrest, he told the FBI that the person captured in videos assaulting police officers looked like him but was not him, and that "there was no trespassing" on January 6, 2021.

The government recommends that the Court sentence Krol to 78 months of incarceration, 8for his conviction of violating 18 U.S.C. §§ 111(a) and (b). A 78-month sentence is within the advisory Guidelines' range of 63-78 months, which the government submits is the correct Guidelines calculation. A 78-month sentence reflects the gravity of Krol's conduct, but also acknowledges his pretrial admission of guilt.

## II.    FACTUAL BACKGROUND

### A.    The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 40, for a short summary of the January 6, 2021 attack on the United States Capitol by

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

**B.      Krol's Role in the January 6, 2021 Attack on the Capitol**

Krol was a self-professed executive officer of the Genesee County, Michigan Volunteer Militia and associate of the Wolverine Watchmen, an extremist group comprised of individuals convicted in the plot to kidnap Michigan Governor Gretchen Whitmer. Krol viciously participated in the January 6 attack on the Capitol. His crimes are documented through a series of videos provided to the FBI by concerned citizens, body worn cameras from the Metropolitan Police Department, and open-source video.

Krol traveled to Washington, D.C. from his home in Michigan to attend the "Stop the Steal" rally and thereafter to the U.S. Capitol, where he made his way to the front lines of rioters up against a police line on the West Plaza. ECF 40 ¶ 8 (statement of offense). At approximately 2:28 p.m., violence broke out between rioters and police officers attempting to hold a defensive perimeter on the West Plaza.

Krol was one of the most active instigators in the violent clash that ultimately forced officers to retreat from the West Plaza at 2:41 p.m. Prior to that, at 2:28 p.m., Krol pushed forward through the crowd of rioters and threw a water bottle at the line of police officers. *Id.* ¶ 9. He then began physically attacking the line of police officers. *Id.* First, he assaulted Metro Police Department Officer D.P., grabbing him and his police baton, spun Officer D.P. around multiple times, eventually wrestled away the baton, and then held it up in celebration. *Id.* at 9.a. Exhibits 1, 2 and 4 are videos showing this assault and images 1-4, *below*, are screenshots from Exhibit 2:



**IMAGES 1-4**
***Krol Rips Baton Away from Officer D.P. (Exhibit 2)***

Krol then used Officer D.P.'s police baton to strike other Metropolitan Police Department Officers, including Officer J.M., at 2:29 p.m.. ECF 40 ¶ 9.b. He then turned and struck the shield of another officer with the stolen baton. *Id.* Exhibits 1, 3 and 4 are videos showing these assaults and images 5-6, *below*, are screenshots from Exhibit 3.



IMAGES 5-6
***Krol Assaults Officer J.M. with Stolen Police Baton (Exhibit 3)***


Shortly thereafter, at 2:29 p.m., U.S. Capitol Police Sergeant Aquilino Gonell was assisting another officer who had fallen to the ground. Sergeant Gonell was pulling a rioter off the officer by grabbing his backpack. Krol approached Sergeant Gonell, raised the stolen police baton high into the air, and violently struck downward on Sergeant Gonell's outstretched bare right hand with the police baton. ECF 40 ¶ 9.c. Videos show the bottom of the baton first striking down toward Sergeant Gonell's outstretched right hand and then the top of the baton striking Sergeant Gonell's shoulder area. Exhibits 1, 5 and 6 are videos showing this assault and images 7-10, *below*, are screenshots from Exhibit 6:



IMAGES 7-10
*Krol Assaults Sergeant Gonell with Stolen Police Baton (Exhibit 6)*

Following the violent strike on Sergeant Gonell, Krol fell back into the mob and was not captured on video again. Officers protecting the Capitol building on the West Plaza, including Sergeant Gonell, then fell back into the tunnel area of the Lower West Terrace at 2:41 p.m.

### *Sergeant Gonell's Bodily Injury*

On March 11 and 16, 2021, Sergeant Gonell was interviewed by the FBI. Sergeant Gonell reviewed publicly available videos with the FBI agents and identified individuals who assaulted him on January 6, 2021. Sergeant Gonell stated then that he believed that the Krol strike at approximately 2:30 p.m. was the one that injured his right hand.

Sergeant Gonell has since provided additional information, including that contained in the sealed addendum attached to the statement of offense,[2] describing the injuries suffered from Krol's assault. Sergeant Gonell not only suffered extensive bruising and cuts from the assault by Krol; the strike also caused permanent damage to the ligaments in his right thumb. Sergeant Gonell received physical therapy for his hand in the weeks following Krol's assault. Physicians conducted many tests, including multiple X-rays, to determine the extent of the damage and possible treatment options. Doctors told Sergeant Gonell that surgery was an option, but he decided against it. Sergeant Gonell experiences pain and discomfort in his right thumb on a regular basis, which he directly links to Krol's assault.

The video evidence summarized above corroborates Sergeant Gonell's statements concerning the injury to his right hand. Image 11, *below*, is an open-source image of Sergeant Gonell with the injured right hand shortly after the Krol assault at 2:30 p.m. and prior to entering

---

[2] With Sergeant Gonell's permission, the government now files the statement as Appendix A to this memorandum.

the tunnel area at 2:41 p.m.:



IMAGE 11
***Sergeant Gonell's Injured Right Hand After Krol Assault at 2:30 p.m.***

Further video evidence shows a significant injury to Sergeant Gonell's hand approximately 20 minutes after Krol's assault when Sergeant Gonell was again defending the Capitol from the tunnel area of the Lower West Terrace. Image 12, *below*, is a screenshot from bodycam footage from the battle in the tunnel area showing Sergeant Gonell's bloody right hand at 2:53 p.m.:



**IMAGE 12**
***Sergeant Gonell's Bloody Right Hand in the Tunnel 20 Minutes After Krol Assault***

Images 13-17, *below*, are pictures provided by Sergeant Gonell depicting his injured right hand shortly after the January 6, 2021 Capitol Riot:



9



IMAGES 13-17
***Sergeant Gonell's Injured Right Hand from Krol Assault Following Capitol Riot***

***Krol's Statements Prior to January 6, 2021***

Prior to the attack on the U.S. Capitol on January 6, 2021, Krol expressed his willingness to engage in mob violence to achieve his political objectives. In Facebook messages, Krol evoked the use of violence against politicians and open hostility toward Michigan Governor Gretchen Whitmer, in addition to sharing pictures of himself carrying weaponry.

Krol was an associate of members of the Wolverine Watchmen / Michigan Patriot members Joseph Morrison, Paul Bellar, and Adam Fox, all of whom were convicted in 2022 in connection to the plot to kidnap Michigan Governor Gretchen Whitmer around early 2020.[3] It is not alleged Krol was involved in the scheme to kidnap Governor Whitmer. However, in June 2020, shortly after the FBI uncovered Facebook messenger chats discussing the plot to kidnap Governor Whitmer,[4] Krol and Adam Fox were both in a Facebook Messenger Group chat of militia leaders

---

[3] *See U.S. v. Fox, et al.*, No. 1:20-cr-00183-RJJ (W.D. Mich. Aug. 23, 2022). *See also* Associated Press, *Three Men are Convicted of Supporting a Plot to Kidnap Michigan Gov. Gretchen Whitmer*, Oct. 26, 2022, *available at*: https://www.npr.org/2022/10/26/1131607112/michigan-governor-gretchen-whitmer-kidnapping-convictions (last visited Dec. 6, 2023).
[4] *See* Robert Snell and Melissa Nann Burke, *Plans to kidnap Whitmer, overthrow government spoiled, officials say*, The Detroit News, Oct. 8, 2020, *available at:*

in Michigan. On June 16, 2020, the following conversation occurred between Krol, Fox, and another individual:

| | |
|---|---|
| **Fox:** | So who's really willing to put it all on the line for Freedom and Liberty … |
| **Fox:** | hypothetically *if we had to storm the Capitol and charge politicians and the Governor with their crimes, who would honestly commit to this*?? |
| **Individual A:** | Keep in mind that this is the opposite of a secure channel…. |
| **Fox:** | Aye I just asked a hypothetical question lol, so hypothetical answers only |
| **Krol:** | *That particular issue: ME*… the reason I state that particular issue, I'm willing to kill or die for Liberty. 24-25 years ago, I had a militia leader ask me to fight the police over a dilapidated boat the was owned by his estranged daughter and court ordered to allow them access to his property over it… I refused that request! |
| **Fox:** | Uhhh ok <br> Everything said on here is hypothetical but it's time to move past the rally's and pointless bullshit that doesn't work |
| **Krol:** | However, *I spoke on the Michigan Capitol steps last fall that I would rather apprehend Tyrants at the Capital, hang them on those beautiful oak tress then kill citizens in a civil war*… just saying |
| **Fox:** | We cannot fight their fight that's been proven for a long time now |
| **Krol:** | Adam… *the problem is… 30-300 is not enough, so we rally to try and build that number!* |
| **Fox:** | Pfffft do we have even 200? I seriously don't know <br> We've done the same things for years with futile results and the Tyrany grows and is an all time high … |
| **Krol:** | I've been doing this a long long time… *numbers are the only way*… unless they make the 2A totally illegal or the blue helmets starry marching on our soil! |

In April 2020, Morrison sent a Facebook message to Krol asking, "[W]hat are the guidelines for the rally armed??" Krol replied, "Michigan law… Open carry and concealed if you have a permit or want to just take that chance. . . . NO RESTRICTIONS ON OUR PART!" Krol subsequently sent pictures of himself dressed in tactical gear and carrying weaponry to Morrison.

---

https://www.detroitnews.com/story/news/local/michigan/2020/10/08/feds-thwart-militia-plot-kidnap-michigan-gov-gretchen-whitmer/5922301002/ (last visited Dec. 7, 2023).

Krol also sent Morrison a picture showing an individual, whom Krol identified in a later message as himself open carrying a handgun being detained by police.

### *Krol's Post-January 6, 2021 Statements*

Nine months after his actions on January 6, on October 27, 2021, Krol was interviewed by Customs and Border Protection officers as he was returning to the United States from Mexico.[5] When stopped, Krol was "pretty pissed" and claimed he was only being stopped because he was a proud supporter of former President Trump. Krol further stated during the CBP interview that "there is a lying fucking thief in the Office, and he needs to go," and "the bitch in Michigan, the governor, she needs to be arrested." During the same interview, Krol proclaimed that he was more patriotic than any of the officers who were questioning him.

When one of the officers asked Krol if he was an activist in Michigan, he admitted to attending First Amendment protected rallies with an AR-style rifle strapped on his shoulder. When asked if he was involved with riots or rallies, Krol stated that he had not attended any riots and what happened in Washington D.C. on January 6 was not a riot. Instead, he characterized it as a peaceful protest. He said he thought it was "bullshit" that people had been arrested for their conduct on January 6.

On February 22, 2022, FBI agents arrested Krol. After waiving his rights, he spoke to the agents. Krol admitted he associates with a number of people who have been charged with the plot to kidnap Governor Whitmer and that he is a militia enthusiast. The FBI agents asked him about Facebook messages he exchanged with people before January 6. When agents asked him about the

---

[5] The government submits a report of interview as Appendix B to this memorandum.

June 16, 2020, chat with Wolverine Watchmen founder Adam Fox quoted *above*, Krol stated it involved a "hypothetical."

During the FBI interview, Krol admitted he was in Washington D.C. on January 6 and that he walked all the way from Trump's speech to the Capitol—walking over a wall to get to the grassy area outside of the Capitol. He admitted the person the FBI agents identified as him in the photos and videos from January 6 looked exactly like him, but said it was not him. He even admitted the person was wearing similar clothing to what he wore on January 6 in DC. At one point in the interview, he stated that the person assaulting police in the videos (who the agents identified as Krol) was upset because "all of the innocent people who were getting smacked down."

The agents and Krol discussed trespassing on January 6. Krol stated that he was never a trespasser because "it's the people's house, and [he] was there, as a people." He said, "there was no trespassing." While Krol denied assaulting police, the FBI agents asked him about the assaults captured on video. Krol stated that he did not know if the assault of police was a criminal act because he did not know the reason behind the assault. He said his belief is that if a police officer is assaulting someone, that person has a right to defend themselves. He also said the person's neighbor has a right to defend them against police officers.

## III.    THE CHARGES AND PLEA AGREEMENT

On March 30, 2022, a federal grand jury returned an indictment charging Krol with eight counts, including assaulting, resisting or impeding officers with a dangerous weapon in violation of 18 U.S.C. §§ 111(a)(1) and (b). On August 15, 2023, Krol pleaded guilty, pursuant to a plea agreement, to Count Four of the indictment charging a violation of 18 U.S.C. §§ 111(a)(1) and (b).

## IV.    STATUTORY PENALTIES

Krol now faces sentencing on assaulting, resisting or impeding officers with a dangerous weapon in violation of 18 U.S.C. §§ 111(a)(1) and (b). As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, Krol faces up to 20 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, restitution, and a mandatory special assessment of $100.

## V.    THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The PSR includes the following Guidelines analysis:

Count Four: 18 U.S.C. § 111(a)(1) and (b)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a)[6] | Base Offense Level | 14 |
| U.S.S.G. § 2A2.2(b)(2)(B) | Use of a dangerous weapon | +4 |
| U.S.S.G. § 2A2.2(b)(3) | Bodily Injury | +3 |
| U.S.S.G. § 2A2.2(b)(7) | Violation of 18 U.S.C. §111(b) | +2 |
| U.S.S.G. § 3A1.2(b) | Official Victim | +6 |

---

[6] By cross-reference from U.S.S.G. § 2A2.4(c)(1) (Obstructing or Impeding Officers), which directs that Section § 2A2.2 (Aggravated Assault) be applied if the conduct constituted aggravated assault.

|  | **Total** | **29** |
|---|---|---|
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | <u>-3</u> |
| **Total Adjusted Offense Level:** | | **26** |

*See* PSR ¶¶ 30-41.

The government agrees with that calculation. The Probation Office calculated Krol's criminal history as category I, which is not disputed. PSR ¶ 44. Accordingly, based on Probation's and the government's calculation of Krol's total adjusted offense level, after acceptance of responsibility, at 26, Krol's Guidelines imprisonment range is 63 to 78 months' imprisonment. U.S.S.G., Ch. 5, Pt. A (Sentencing Table).

### Application of U.S.S.G. § 2A2.2(b)(3) regarding bodily injury

As permitted under the plea agreement, Krol disputes that the § 2A2.2(b)(3) bodily injury enhancement applies in this case. *See* Plea Agreement at ¶¶ 5(A), (C). The PSR correctly found that the enhancement applies based upon the statement of offense and the sealed addendum to the statement of offense containing Sergeant Gonell's account of how Krol injured his bare right hand by striking it with the stolen police baton on the West Plaza. *See* PSR §§ 25, 32.

The term "bodily injury" in § 2A2.2(b)(3) has the meaning given to that term in § 1B1.1. *See* U.S.S.G. 2A2.2, Application Note 1. That section defines "bodily injury" as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." *See* U.S.S.G. 1B1.1, Application Note 1(B). "Serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of

a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id*. Application Note 1(M).

Here, the bodily injury inflicted upon Sergeant Gonell by Krol's strike to his hand not only is clearly sufficient to meet the definition of "bodily injury" in § 2A2.2(b)(3); it also meets the definition of "serious bodily injury."[7] Krol has admitted to striking Sergeant Gonell with a dangerous weapon (a stolen police baton) on the West Plaza at around 2:30 p.m. on January 6, 2021. *See* ECF 40 ¶ 9.c. (statement of offense). Krol specifically pleaded guilty to assaulting Sergeant Gonell (Count Four). Sergeant Gonell has confirmed that Krol's strike on his outstretched, bare right hand caused bodily injury. The video evidence summarized above shows Krol violently swinging a police baton down to strike Sergeant Gonell's outstretched, bare right hand. *See* Section II.B, *above*. After Krol's strike at 2:30 p.m. and before officers were forced into the tunnel area of the Lower West Terrace at 2:41 p.m., Sergeant Gonell's injured right hand can be seen on the West Plaza. *See* Image 11, *above*. Bodycam captures Sergeant Gonell's bloody right hand inside the tunnel at approximately 2:53 p.m.. *See* Image 12, *above*. Sergeant Gonell provided images of his badly injured and swollen right hand after the January 6, 2021 Capitol Riot. Images 13-17, *above*.

In sum, the government has demonstrated by a preponderance of the evidence that Krol's strike to Sergeant Gonell's outstretched, bare right hand with a stolen police baton caused bodily injury, which triggers application of the § 2A2.2(b)(3) bodily injury enhancement. *See United*

---

[7] To be clear, the plea agreement in this case limits the United States to only seeking the +3 "bodily injury" enhancement under in § 2A2.2(b)(3). The United States is not permitted by the agreement to seek the +5 "serious bodily injury" enhancement. As a result, the United States is seeking a guideline sentence at the top end of the guideline range.

*States v. White*, 2008 WL 1782356, at *2 (D.D.C. Apr. 18, 2008) (applying a "preponderance of the evidence" standard to the application of guideline enhancements). The PSR thus correctly applies the § 2A2.2(b)(3) bodily injury enhancement.

### Application of U.S.S.G. § 4C1.1

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. Section 4C1.1 will be in effect at the time of sentencing in this matter but was not considered at the time the parties entered into the plea agreement.

Section 4C1.1 does not apply in this case for at least two, straightforward reasons. First, Krol used very substantial violence in connection with the offense. *See* U.S.S.G. § 4C1.1(a)(3). Second, Krol used a dangerous weapon in connection with the offense. *See* U.S.S.G. § 4C1.1(a)(7).

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.    Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Krol's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Krol pushed his way to the front line of the violent clash that occurred between rioters and police officers protecting the Capitol building. He then engaged in some of the most violent conduct on January 6, 2021. He stole an officer's police baton, assaulted

at least three officers and seriously injured Sergeant Gonell. The nature and circumstances of Krol's offenses were of the utmost seriousness, and fully support the government's recommended sentence of 78 months' incarceration, 3 years of supervised release, $2,000 restitution, and a mandatory $100 special assessment.

### B. Krol's History and Characteristics

The PSR states that Krol enlisted in the U.S. Marines Corps in 1978 and received an honorable discharge. PSR ¶ 68. However, **a**ccording to statements made to the FBI, Krol was discharged from the U.S. Marine Corps for disobeying an order.[8] He has had contact with police but has no criminal history. He claims that he is disabled.

While Krol has no criminal history points, he has shown a willingness to use violence to achieve political objectives. The June 2020 exchange with Adam Fox summarized *above* demonstrates that Krol understood before January 6, 2021 that a mob with significant numbers could be used as a tool to achieve desired political outcomes. On January 6, 2021, Krol put this plan into action and engaged in violent acts with a mob of rioters behind him at the U.S. Capitol. Krol's history and characteristics, including his history of violent rhetoric, weigh heavily in favor of a lengthy term of incarceration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Krol's criminal conduct on January 6 was the epitome of disrespect for the law.

---

[8] Krol explained his discharge in his FBI interview around the minute 38-43 mark, stating, "In hindsight, I wish I would have graduated as a Marine. I was a rebellious kid."

### C.  The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[9] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

First, although Krol has a criminal history category of I, his history of violent rhetoric and post-January 6 statements to law enforcement officials show a troublesome pattern of disrespect for laws and rules that he personally disagrees with. They also show an utter lack of remorse for his violent actions on January 6, 2021. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan). Krol's own statements that "what happened in Washington D.C. was not a riot," that it was a

---

[9] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

"peaceful protest," and that "there was no trespassing" on January 6 demonstrate that the sentence must be sufficient to provide specific deterrence from committing future crimes of violence, particularly in light of his history of violent rhetoric.

E.      The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

F.      Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United*

*States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Daniel Leyden*, 21-cr-314 (TNM), Sent. Hrg. Tr. at 38 ("I think the government rightly points out generally the best way to avoid unwarranted sentencing disparities is to follow the guidelines.") (statement of Judge McFadden); *United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier

'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[10]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[11]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *U.S. v. Khater et al.*, 21-cr-222, Judge Hogan sentenced the defendant to 80 months' imprisonment after he pled guilty to violating 18 U.S.C. § 111(a)(1), (b), and 2 for using chemical spray to assault police officers.[12] Like Krol in this case, Khater observed the raging violence

---

[10] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[11] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

[12] One such officer passed away after the assault, but the government did not formally attribute his death to the use of such dangerous weapon. *See* 21-cr-222, ECF No. X (sentencing memo).

occurring against police officers and willingly and voluntarily joined that attack by spraying pepper spray at any officer he could find, causing bodily harm to police officers. The sentence was within the calculated guideline range of 78-97 months.

In *United States v. Caldwell*, 21-cr-181 (CKK), the defendant also pleaded guilty to violating 18 U.S.C. § 111(b). Before going to the Capitol building on January 6, Caldwell armed himself with bear spray, outfitted himself with glasses that could protect him from some of the effects of pepper spray, and brought a Baofeng handheld two-way radio that could send and/or receive communications during the riot. After spraying a line of officers protecting the Lower West Terrace Plaza area, he made his way to the Capitol Building and entered through the Senate Wing door. During the riot, Caldwell taunted police officers by asking them to spray him and asking if they were "scared." Judge Kollar-Kotelly sentenced Caldwell to 68 months' incarceration and 35 months' probation. Although Caldwell's conduct was highly egregious, he did not rip away a police baton from one officer, strike three others, and injure a Capitol Police Sergeant, as Krol did. A longer sentence is appropriate here.

Here, the government is recommending a guideline sentence of 78 months' imprisonment for Krol.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

restitution under the VWPA).[13] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The victim in this case, Oficers D.P. and J.M. have elected not to participate in the sentencing process. Sergeant Gonell did suffer bodily injury from Krol's assault but has not submitted a specific request for restitution. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Krol must pay $2,000 in restitution, which reflects in part the role Krol played in the riot on January 6.[14] Plea Agreement at ¶ 12. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Krol's restitution

---

[13] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[14] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 101.

## VIII.   CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a guideline sentence of 78 months' incarceration, 3 years of supervised release, $2,000 restitution, and a mandatory $100 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: */s/ Andrew J. Tessman*
     ANDREW J. TESSMAN
     Assistant United States Attorney
     District of Columbia – Detailee
     West Virginia Bar No. 13734
     300 Virginia Street
     Charleston, WV 25301
     (304) 345-2200
     Andrew.Tessman@usdoj.gov